FILED

99 APR 12 PM 4:05

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
APR 12 1999

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| GREGORY CARDEN, | ) |
| Plaintiff, | ) |
| -vs.- | ) CV-95-P-1891-W |
| UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This plaintiff, Gregory Carden, filed his complaint on July 24, 1995, asserting claims under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2461 et seq , for the amputation of his leg at Bethesda Medical Center in Maryland.[2] In his complaint, Carden asserts claims for (1) negligent amputation, (2) negligent diagnosis and treatment, (3) lack of informed consent, and (4) breach of express warranty.[3] The government filed a Motion for Summary Judgment Based Upon the Statute of Limitations on October 19, 1995. In an Order dated February 16, 1996, this court granted the government's motion for summary judgment, finding that the plaintiff's cause of action accrued within six months of his amputation surgery rather than in September of 1992.[4] On appeal, the

---

[2] As many of the facts of this case have been recounted in previous opinions, the court will address only those facts necessary to a determination of the present summary judgment motion.

[3] Under the FTCA, the law of the place where the act or omission occurred is controlling In this case, the law of Maryland applies

[4] As a pre-requisite for filing a claim with the district court under the FTCA, a plaintiff must "first present the claim to the appropriate Federal agency" and have the claim denied in writing.  28 U.S.C. § 2675(a).

1

Eleventh Circuit reversed and remanded the case, concluding that Carden did not know the cause of his injury until September 1992 when he was informed by an employee at a pain management clinic that neuromas sometimes develop after a nerve is cut or damaged.

After the case was returned to this court, the government filed a substantive Motion for Summary Judgment on July 31, 1998. An Amended Motion for Summary Judgment followed on August 25, 1998. The government asserts two basis for granting summary judgment. First, the government argues that the plaintiff's breach of express warranty claim is due to be dismissed for lack of subject matter jurisdiction because it is a contract claim for more than $10,000.00, and therefore belongs in the U.S. Court of Federal Claims. Alternatively, if the court construes the claim as a tort claim, the government asserts that the plaintiff failed to raise it administratively. Second, the government argues that the plaintiff's expert is without sufficient knowledge, skill, and experience to express an opinion based upon the standard of care applicable to the specialty of the plaintiff's treating physician(s). The court took the motions under submission on September 21, 1998. After careful consideration of the motions, briefs, and evidentiary submissions, the court finds that the government's summary judgment motion is due to be denied as to the sufficiency of the plaintiff's expert testimony. However, the court finds that the breach of express warranty claim is due to be dismissed for lack of subject matter jurisdiction because the claim is a contract claim for more than $10,000.00 against the United States. The court finds that plaintiff's claims for medical malpractice against the government should proceed to mediation and, if mediation is unsuccessful, to trial.

Anaylsis

I. Breach of Express Warranty Claim

      In his complaint, Carden alleges that his treating physician, Dr. Gitelis, "breached the express warranty he issued to the plaintiff." According to Carden, Dr. Gitelis "strongly recommended the procedure to the plaintiff, told the plaintiff that an amputation would end his pain and would foreclose the need for future surgery, and 'guaranteed' the success of the amputation with regard to relieving the plaintiff's pain." Carden alleges that an oral contract was created when, during medical consultation, Carden agreed to the amputation after Dr. Gitelis allegedly assured him that he would never require further surgery and that his pain would end. However, the defendant's expert witness, Dr. Ross Wilkins, notes that Carden signed as operative consent form that clearly states, "the nature and purpose of the operation or procedure, possible alternative methods to treatment, the risks involved, and the possibility of complications have been explained to me. *I acknowledge that no guarantees have been made to me concerning the results of the operation or procedure.*" (Defendant's Evidentiary Submission, Exhibit III B, emphasis added).[5]

      A breach of express warranty claim is a contract-based claim. Because all contract claims against the government for $10,000.00 falls within the exclusive jurisdiction of the U.S. Court of Federal Claims, this court has no subject matter jurisdiction over the claim. While noting that the plaintiff's claim for breach of express warranty appears to be questionable under Maryland law, the court nevertheless finds that the claim is due to be dismissed without prejudice in this court for lack

---

[5]The court was not furnished with the actual consent form as part of the evidentiary submissions. However, Dr. Wilkins's expert report cites to the language of the consent form. The plaintiff did not dispute this material fact.

3

of subject matter jurisdiction.

## II. Sufficiency of Expert Witness Testimony

The government also alleges that Carden's expert witness, Dr. Robert L. Watson, is not qualified to render an opinion regarding the standards of care applicable to Dr. Gitelis's medical treatment of the plaintiff. Dr. Watson is a board certified anesthesiologist, an expert in pain management. According to Dr. Watson's testimony, Dr. Gitelis failed to follow the standard of care in diagnosing and treating the plaintiff for chronic pain in 1991.

In its summary judgment motion, the government asserts that in order for a medical expert to testify about the applicable standard of care in malpractice case, the expert witness must belong to the same specialty as the allegedly negligent doctor. Under this analysis, the plaintiff's expert would have to be an orthopedic surgeon with a specialty in oncology, just like Dr. Gitelis. However, applicable Maryland case law does not support such a proposition.[6] Rather, Maryland follows the general notion that an expert witness is competent to give an opinion as long as he is reasonably familiar with the subject matter under investigation, "regardless of whether the special knowledge is based upon professional training, observation, actual experience or any combination of these factors." Radman v. Harold, 367 A.2d 472, 474 (Ct. App. Md. 1977). Without comment as to the merits of the testimony, the court finds that the plaintiff's expert should not be precluded from offering his

---

[6]In its initial summary judgment motion, the government cited to a Maryland statute that requires the plaintiff in a medical malpractice case to "proffer expert medical testimony from a similarly situated health care provider." Md. Code Ann., [Cts. & Jud. Proc.] § 3-2A-02(c). However, the government subsequently admitted that the statute cited was not enacted until 1993, after this cause of action arose. The defendant now asserts essentially the same ground based not upon the inapplicable statute but upon prior Maryland case law.

4

medical opinion in this case.[7] Because a genuine issue of material fact exists with regard to the standard of care and treatment of the plaintiff, the government's summary judgment motion is due to be denied. This case should proceed forward to mediation, and if unsuccessful, to trial on the negligent amputation, negligent diagnosis and treatment, and lack of informed consent claims.

Date: April / 2, 1999.

_____
Chief Judge Sam C. Pointer, Jr.

Service List:
James F. Walsh
David B. Hall
Jenny L. Smith
G. Douglas Jones

---

[7] Much of the government's argument and evidence in support of its summary judgment motion is more properly attributable to the weight, rather than the admissibility, of the expert testimony.

5